# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 2:20-cr-266-5 |
| | ) | |
| v. | ) | |
| | ) | |
| NATHANIEL MCKNIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

A grand jury indicted Nathaniel McKnight and 12 other co-defendants for conspiring to distribute five kilograms or more of cocaine. Mr. McKnight was also charged, along with one other co-defendant, with conspiring to distribute 40 grams or more of fentanyl. If convicted, Mr. McKnight faces at least 10 years of imprisonment, and so there exists a rebuttable presumption that he must remain detained pending trial. At his detention hearing, Magistrate Judge Lenihan found that Mr. McKnight had not overcome that presumption and, further, that there were no release conditions that could be imposed to reasonably protect the community from Mr. McKnight. Mr. McKnight now seeks *de novo* reconsideration of that decision from this Court.

After carefully considering Magistrate Judge Lenihan's decision and the competing evidence and argument, the Court finds that Mr. McKnight has not met his burden of production. Most notably, he has presented insufficient evidence to rebut the presumption that he is a danger to the community—*i.e.,* that he would comply with conditions of release and not continue to commit crimes similar to those he is charged with. Further, even assuming Mr. McKnight could carry his burden of production, as discussed below, the government has established by clear and convincing evidence that Mr. McKnight would pose a risk to the community if released. That is, in addition to past violations of court-imposed release conditions,

Mr. McKnight is charged, in part, with conduct that occurred while he was on state-court bond following his arrest for possessing the very cocaine that supports the remainder of this federal indictment.

Thus, considering the presumption in favor of detention, the Bail Reform Act factors, and the evidence presented at the detention hearing before Magistrate Judge Lenihan, the Court finds that Mr. McKnight is a danger to the community and that no combination of conditions will reasonably assure the safety of the community if he is not detained until trial.  The Court will deny Mr. McKnight's motion.

## BACKGROUND

On September 22, 2020, a federal grand jury in the Western District of Pennsylvania returned an Indictment charging Defendant Nathaniel McKnight and 12 others with conspiring to distribute and possess with the intent to distribute five kilograms or more of cocaine from in and around March 2019 through in and around September 2020, contrary to the provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and in violation of 21 U.S.C. § 846.  ECF 3.  Mr. McKnight, along with one of his co-defendants, was also charged with conspiring to distribute and possess with the intent to distribute 40 grams or more of fentanyl from in an around March 2020 through in and around September 2020, contrary to the provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi), and in violation of 21 U.S.C. § 846.  *Id.*

On October 6, 2020, Mr. McKnight appeared for a detention hearing before Magistrate Judge Lenihan.  During the hearing, Drug Enforcement Administration Task Force Officer and City of Pittsburgh Police Detective Michael A. Molitaris testified that Mr. McKnight was believed to be a member of a drug-trafficking organization that operated throughout the Western District of Pennsylvania, as well as in Columbus, Ohio; Gettysburg, Pennsylvania; Orlando, Florida; and Puerto Rico.  ECF 248, pp. 5-6.

The investigation into Mr. McKnight and the drug-trafficking organization involved nine months of Title III wiretaps. *Id.* at p. 6. Mr. McKnight was intercepted making incriminating statements on an unspecified number of them. *Id.* For example, on March 14, 2020, Mr. McKnight was intercepted speaking with co-defendant Bruce McKnight, who resided in Columbus, Ohio. *Id.* During the recorded conversation, the two men discussed Nathaniel McKnight transporting cocaine from Columbus, Ohio to New Castle, Pennsylvania. *Id.* at p. 7. The following day, Bruce McKnight was intercepted on a call with Tony McKnight, informing him that Nathaniel McKnight would be transporting nine ounces of cocaine. *Id.* Investigators notified the New Castle Police Department, who initiated a traffic stop on Nathaniel McKnight's vehicle. *Id.* Mr. McKnight was identified as the driver. *Id.* A passenger was also in the vehicle. *Id.* During the stop, officers recovered nine ounces of cocaine from the passenger in the vehicle and one ounce of cocaine from Mr. McKnight. *Id.* at p. 8. Mr. McKnight was charged with manufacturing, delivering, or possessing with intent to deliver a controlled substance in the Lawrence County Court of Common Pleas. *Id.* He was released from custody on March 20, 2020 and has been on bond in that case ever since. *Id.*

While on bond, Mr. McKnight spoke again with Bruce McKnight on May 2, 2020. *Id.* During that conversation, Bruce McKnight informed him that he had provided a female "tester" with a quantity of fentanyl, and that this tester had advised Bruce McKnight that the fentanyl was of high quality. *Id.* at pp. 8-10. The two men also discussed cutting fentanyl. *Id.* at p. 10. Then, on June 2, 2020, they discussed the current price of fentanyl, which was, apparently, $2,500 per ounce. *Id.* Nathaniel McKnight commented that the fentanyl was "good shit. That's their Kill Bill." *Id.* Finally, on June 16, 2020, Bruce advised Nathaniel McKnight, "My dude text me. You know, fetty rock…He said dinner will be ready when I get back." *Id.* at p. 11. Detective Molitaris interpreted this comment to mean that Bruce McKnight's

source of fentanyl supply was ready to resupply him. *Id.* Nathaniel McKnight responded, "Oh, that's perfect. Hell yea," and "Hell, yeah, I like that. That part made my day right there." *Id.*

Following his arrest on the instant charges, the United States Probation Office's Pretrial Services section determined that Mr. McKnight poses a risk of nonappearance and a risk of danger to the community. *See* Pretrial Services Report, at p. 9. Accordingly, Pretrial Services recommended that Mr. McKnight be detained pending trial. *Id.*

At the detention hearing before Magistrate Judge Lenihan, Mr. McKnight did not proffer any witnesses, but, instead, relied on aspects of the Pretrial Services Report. He argued that the presumption of detention was rebutted because: (1) he self-surrendered to authorities; (2) there was no testimony regarding any use of firearms or violence; (3) the weight of the evidence was not strong; (4) he has significant ties to the community; (5) prior "defiant trespass" charges on his record were based on visiting his father in public housing to provide care for him; (6) he is gainfully employed, as a home caregiver for his mother; and (7) he is asthmatic. ECF 248, at pp. 17-21. As a release plan, Mr. McKnight proposed that he would return to his mother's residence, where he has lived for at least two years. *See* Pretrial Services Report, at p. 2.

The government responded by arguing that Mr. McKnight failed to rebut the presumption of detention, and that return to his mother's residence was not a suitable release plan. ECF 248, at p. 21. The government emphasized the seriousness of Mr. McKnight's participation in a multi-state, drug-trafficking conspiracy, and that Mr. McKnight's involvement in that conspiracy was supported by probable cause. *Id.* at pp. 21-22. The government also outlined Mr. McKnight's criminal history and past crimes committed while under court supervision. *Id.* at pp. 23-24. Finally, given his

criminal history, the government noted that Mr. McKnight may ultimately face an enhanced mandatory minimum of 15 years' imprisonment. *Id.* at p. 23.

After hearing from the parties, Magistrate Judge Lenihan noted the presumption in favor of detention and weighed the factors required by the Bail Reform Act. *Id.* at p. 25. As to the nature and circumstances of the offense, Magistrate Judge Lenihan noted that Mr. McKnight "has been charged in a very, very serious conspiracy to distribute not only cocaine, but also 40 grams or more of fentanyl, taking place over a number of months across a number of different states," and that "fentanyl is also the cause of many deaths in our community." *Id.* Magistrate Judge Lenihan then determined that the weight of the evidence was "moderate," noting that there was "testimony of a number of wiretaps ranging from March through September with [Mr. McKnight] engaging in conversations regarding an illegal drug business and specifically regarding fentanyl." *Id.* at p. 26. Finally, while Magistrate Judge Lenihan determined that Mr. McKnight did not pose a flight risk, she emphasized that "what concerns me the most is two prior felony convictions for possession with the intent to deliver a controlled substance, and then an arrest in March, also for possession." *Id.* Judge Lenihan also observed that, after his March arrest, it was "certain that [Mr. McKnight was] … told not to commit any federal, state or local crimes, which is exactly what [the court] would be telling [Mr. McKnight] were [the court] to release [him] today." *Id.* at p. 27. Thus, she concluded that "[t]he release plan of returning [Mr. McKnight] to the same address where [he] resided when all of these crimes were alleged to have occurred is not sufficient … to find that the presumption is rebutted" and, further, that "there are no conditions that [the Court] could impose that would reasonably protect the safety of the community because [Mr. McKnight's] past behavior has indicated that [he does] not follow conditions that have been imposed by the Court." *Id.*

On January 12, 2021, Mr. McKnight filed a Petition to Revoke Order of Detention.  ECF Nos. 243-44.  In addition to raising substantially the same arguments raised before Magistrate Judge Lenihan, Mr. McKnight notes that he was a primary caregiver for his potentially terminally ill father, whose health has declined in his absence.  The government filed a brief in opposition to Mr. McKnight's petition on January 19, 2021.  The matter is now fully briefed and ready for decision.

## LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3145(b), provides that "[i]f a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Where a defendant seeks revocation of a magistrate judge's detention order, the district court applies a *de novo* standard of review.  *See United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985); *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release.").  In this context, however, *de novo* review does not require an additional or independent evidentiary hearing by the district court, and the court may incorporate the transcript of the proceeding before the magistrate judge, including any admitted exhibits. *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (Diamond, J.).  Further, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).

There is a presumption of detention in cases, such as this one, where the defendant is charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed by the Controlled Substances Act (21 U.S.C. §§ 801-904), so long as "the judicial officer finds that there is probable cause to believe that

the person committed" said offense. 18 U.S.C. § 3142(e)(3). Mr. McKnight does not dispute the existence of probable cause to support his arrest.

However, a defendant may rebut the presumption by presenting "some credible evidence" to support "his contention that he will appear and will not pose a threat to the community" if released. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (citation omitted). Production of evidence relating to character, family ties, employment, and length of residence in the community may rebut the presumption that he poses a danger to the community. *Id.* at 561.

In cases like this one involving distribution of narcotics, it "is not only helpful, but is often crucial to an effective rebuttal of the statutory presumption" that the defendant show sufficient evidence of his "moral integrity, respect for the law, or personal reliability." *United States v. Santiago-Pagan*, No. 8-424, 2009 WL 1106814, at *5 (M.D. Pa. April 23, 2009). That said, "[t]he defendant's burden of production is relatively light and has been construed as easy to meet." *United States v. Araiza-Vega*, No. 20-218, 2020 WL 6546136, at *4 (W.D. Pa. Nov. 6, 2020) (Hardy, J.) (citations omitted). If the defendant provides enough evidence to rebut the presumption of detention, the evidentiary burden shifts back to the government to show that the defendant presents either a risk of flight or a danger to the community. *See United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986).

"To this end, the Court should consider the four factors listed [in 18 U.S.C. § 3142(g)], and if at the end of this analysis, Defendant rebuts the presumption, the burden shifts back to the Government to prove Defendant poses a threat of flight and a threat of dangerousness to the community." *United States v. Wooley*, No. 11-158, 2012 WL 3245472, at *2 (W.D. Pa. Aug. 7, 2012) (Schwab, J.) (citing *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)). The familiar four factors of Section 3142(g) are: (1) the nature and circumstances of the offense; (2) the weight of the evidence

against the person; (3) the history and characteristics of the person, including his character, family, employment, finances, length of residence, ties to community, drug abuse history, criminal history, record of appearance at court proceedings, and whether he was on bond at the time of the charged offense; and (4) the nature and seriousness of the danger posed by the person's release.

## DISCUSSION & ANALYSIS

The threshold question here is whether Mr. McKnight has produced credible evidence to rebut the presumption of detention. He has not.

Initially, the Court agrees with Magistrate Judge Lenihan's determination that Mr. McKnight is probably not a flight risk. His local family ties and work as a caregiver for his mother and father are evidence of that. But he has failed to produce competent evidence that he will not pose a danger to the community. To the contrary, the clear evidence in the record suggests that Mr. McKnight is likely to continue committing crimes if released, as he has done in the past. Thus, as more fully discussed below, Mr. McKnight has simply not met his burden to rebut the presumption that he should be detained pending trial.

## I.    Nature and circumstances of the offense.

There is no dispute that Mr. McKnight's charges, standing alone, are serious—which is why Congress mandated a presumption of detention. Mr. McKnight is facing a mandatory-minimum prison sentence of 10 years (and, possibly, 15 years). *See United States v. Terron*, No. 18-413, 2020 WL 2404618, at *2 (M.D. Pa. May 12, 2020) ("[T]he Court finds that the offenses alleged against Terron are very serious drug charges which carry with them significant penalties. This factor weighs heavily in favor of Detention."). Furthermore, Mr. McKnight is one of only two defendants in this case who have been charged with conspiring to distribute fentanyl, a highly dangerous drug, in addition to cocaine. Finally, the evidence presented at the detention hearing suggested that Mr. McKnight was involved in a sophisticated drug-

trafficking ring, distributing hard drugs across several states, rather than, for example, low-level street dealing aimed at feeding a personal addiction.

As a result, the circumstances of Mr. McKnight's offense weigh in favor of detention.

## II.    Weight of the evidence.

The Court concurs with Magistrate Judge Lenihan's observation that the weight of the evidence against Mr. McKnight was "moderate." At a minimum, this evidence apparently includes several wiretap recordings of incriminating statements that will be difficult to fully explain away, even if they do not shed full light on the precise extent of Mr. McKnight's role in the drug-trafficking ring under investigation. Mr. McKnight also does not challenge the existence of probable cause to support his arrest or present any affirmative evidence of innocence. The weight of the evidence thus counsels somewhat in favor of, or at least does not cut against, upholding the presumption of detention.

## III.    History and characteristics of the defendant.

Mr. McKnight's presentation at the detention hearing consisted primarily of demonstrating his family and community ties. In his petition, he also provides additional detail about his role in caring for his ailing father, who he says may be terminally ill with a blood infection. The Court sympathizes with the hardships Mr. McKnight faces related to his father, and finds that this evidence is relevant to demonstrate that Mr. McKnight is not a flight risk. But this is not the sort of evidence that is relevant to satisfy Mr. McKnight's burden of production, at least in the context of this case.

To be sure, a defendant's burden of production is "light" and a defendant can in certain circumstances point to evidence such as family ties and community ties to satisfy his burden of production. But that evidence ultimately must be probative of a defendant's conduct—in other words, the evidence produced must tend to suggest

that the "defendant's criminality is a thing of the past." *See Santiago-Pagan*, 2009 WL 1106814, at *5. [1]

The evidence that Mr. McKnight has proffered does not suggest in any way that his "criminality is a thing of a past." This is so because Mr. McKnight committed the alleged crimes while residing in the same home, with the same family members, while filling the same caregiver role, and with the same medical and health conditions that he currently has. He has other provided no evidence that would suggest that his criminal conduct was an aberration, or that something has changed to make him more personally reliable or have a respect for the law. The Court thus finds that the evidence produced by Mr. McKnight is not relevant to a lack of danger to the community, and thus he has not met his burden of production. *Cf. United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *8 (W.D. Pa. Oct. 13, 2020) (Ranjan, J.); *United States v. Rosa-Robles*, No. 19-380, at *9 (W.D. Pa. 2020) (Ranjan J.).

## IV.   Nature and seriousness of the danger posed.

Additionally, and perhaps most significantly, Mr. McKnight has multiple, prior drug trafficking convictions and a history of committing crimes while under court supervision. Most significantly, Mr. McKnight allegedly committed one of the instant offenses—conspiracy to distribute fentanyl—while on bond from state-court charges associated with the other instant offense—conspiracy to distribute cocaine. Likewise, in 2013, Mr. McKnight pled guilty to possession with intent to deliver a controlled

---

[1] A defendant could satisfy this burden in several different ways. For example, a defendant could present some evidence (1) that he has made significant changes in his life since the crime was committed which have eliminated or significantly reduced any danger; (2) that he is credibly able to make changes to his life circumstances or living situation as a condition of pretrial release and can be relied on to do so; or (3) that his crime was, for whatever reason, an aberration, inconsistent with his usual character, and thus unlikely to be repeated on release. If the defendant presents such evidence (or its equivalent), then in many cases, he will have met his relatively light burden of production, and the burden then shifts to the government to prove that he nonetheless poses a risk of flight or dangerousness that makes detention necessary.

substance while on bond in another case where he pled guilty to the same crime. Given this history of recidivism, the Court has no confidence that, if released, Mr. McKnight would do anything other than what he has done in the past—continue trafficking drugs.

Finally, as noted above, the charges here are very serious.  Drug trafficking, on its own, presents a risk of danger to the community.  Indeed, "[t]he statutory language as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985); *see also United States v. Rice*, No. 17-1450, 2017 WL 6349372, at *7 (W.D. Pa. Dec. 13, 2017) (Conti, J.) ("Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs.").

In sum, Mr. McKnight's "community ties do not overshadow the factors that clearly and convincingly establish that he poses a danger to persons in the community." *Delker*, 757 F.2d at 1401.  In fact, weighing all the statutory factors, the Court finds that Mr. McKnight has failed to produce any evidence bearing on his danger to the community, and that there is a considerable amount of evidence to the contrary.  As a result, Mr. McKnight has not overcome the applicable presumption of detention and, further, the Court is persuaded that no condition or combination of conditions could reasonably assure that Mr. McKnight would not pose a danger if released.  The Court will therefore order him to be detained pending trial.[2]

---

[2] To be clear, even assuming that Mr. McKnight's evidence is of the kind and type that would satisfy his burden of production, this would not alter the result here. Based on the foregoing factors and evidence, the government has satisfied the burden of persuasion by clear and convincing evidence that Mr. McKnight would pose a serious danger to the community if released.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny Mr. McKnight's motion to revoke the detention order and order Mr. McKnight to be detained pending trial. An appropriate order follows.

DATE: February 17, 2021                    BY THE COURT:

                                           /s/ *J. Nicholas Ranjan*
                                           United States District Judge